UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELISSA CHINN, | |
| Plaintiff, | |
| v. | C20-995 TSZ |
| WHIDBEY PUBLIC HOSPITAL DISTRICT d/b/a WHIDBEY HEALTH MEDICAL CENTER, | ORDER |
| Defendant. | |

THIS MATTER comes before the Court on a Motion to Exclude Plaintiff's Expert Laurie Rudman, Ph.D, docket no. 33, filed by Defendant Whidbey Public Hospital District d/b/a Whidbey Health Medical Center ("Whidbey Health"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

In June 2020, Plaintiff Melissa Chinn, D.O. filed a complaint against her former employer alleging wrongful termination, discrimination, retaliation, and equal pay claims. Compl. at ¶¶ 4.1–4.29 (docket no. 1). In her Complaint, Dr. Chinn, who is Asian and of Chinese national origin, alleges that while she was working at Whidbey Health,

ORDER - 1

1 nurses, staff, and other medical providers refused to follow her directives on patient care.

2 Id. at ¶¶ 1.1 & 3.9.  Dr. Chinn also asserts that she was subjected to "remarks about her

3 'slanted' eyes and being called 'oriental.'"  Id. at ¶ 3.10.  Dr. Chinn further contends that

4 Whidbey Health expected her to be "docile and subservient" and refused to act on the

5 discriminatory treatment she faced.  Id. at ¶ 3.11.  Dr. Chinn asserts that her non-Asian,

6 male counterparts were not subjected to the same treatment.  Id. at ¶¶ 3.9 & 3.13.

7 Dr. Chinn also alleges that Whidbey Health paid her less than her male counterparts for

8 performing substantially similar work.  Id. at ¶ 3.6.  According to Dr. Chinn, after she

9 reported discrimination and safety issues, Whidbey Health terminated her employment.

10 Id. at ¶ 3.14.

11        In March 2021, Dr. Chinn listed Laurie Rudman, Ph.D. on her expert disclosures.

12 Hanley Decl. at ¶ 2 (docket no. 40).  Dr. Rudman's Report on Sex and Race

13 Discrimination ("Report") proposes to inform the jury about "empirically validated

14 principles concerning the operation of stereotypes and discrimination and how they

15 impinge on social equality."  Report at 4, Ex. 1 to Steiner Decl. (docket no. 34-1).  Dr.

16 Rudman also anticipates testifying "about principles of sex stereotyping and

17 discrimination in the form of backlash effects."  Id. (emphasis omitted).  The Report

18 explains Dr. Rudman's views about the nature of sexism, including the causes, patterns,

19 extent, and consequences of sexism and the circumstances that allow it to flourish.  Id. at

20 6.  The Report describes "backlash effects" as "the social and economic penalties

21 incurred by agentic (high-achieving, competent, and assertive) women as a result of

22 double standards for masculine behaviors that are necessary for being perceived as an

23

ORDER - 2

expert and a leader but which are costly only for women." Id. at 14; see id. at 4 & 27 (defining "agentic"). According to the Report, the stereotype of Asian women "as more feminine, humble, and shy" creates more of a risk of backlash for agentic Asian women compared with other women. Id. at 24–25. After explaining what Dr. Rudman calls the "social framework," the Report indicates that Dr. Rudman "will testify that [Dr. Chinn's] treatment at Whidbey Health is consistent with prejudicial treatment and backlash effects as a result of [her] counterstereotypic status and behavior." Id. at 27. The Report then points to specific examples of how Dr. Chinn was treated at Whidbey Health that allegedly support Dr. Rudman's opinion. Id. at 27–40.

**Discussion**

Whidbey Health moves to exclude Dr. Rudman on the grounds that her testimony is not reliable and that it is not based on sufficient facts. Federal Rule of Evidence 702 lists criteria for when a witness may testify as an expert:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The party offering the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Bldg Indus. Ass'n of Wash. v. Wash. State Bldg.

ORDER - 3

Code Council, 683 F.3d 1144, 1154 (9th Cir. 2012); see also Bourjaily v. United States, 483 U.S. 171, 175–76 (1987). Rule 702 is liberally construed in favor of admissibility. See Daubert v. Merrell Dow Pharmas., Inc., 509 U.S. 579, 588 (1993).

Courts must, however, take care "to assure that a proffered witness truly qualifies as an expert, and that such testimony meets the requirements of Rule 702." Jinro Am. Inc. v. Secure Invs., Inc., 266 F.3d 993, 1004 (9th Cir. 2001). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. Whidbey Health challenges the reliability of Dr. Rudman's testimony on the grounds that the research findings on which she depends have not been independently replicated.

In its motion, Whidbey Health refers to a "reform era" in social psychology, stating that "social framework" experiments have experienced a "reproducibility crisis" over the last decade. Mot. to Exclude at 1 (docket no. 33). According to one source cited by Whidbey Health, namely the August 28, 2015, issue of *Science*, during this "reproducibility crisis," research teams could replicate only 39% of findings in studies from the three psychology journals. Id. at 1 & n.4. In another article referenced by Whidbey Health, from the *International Review of Social Psychology*, the authors could verify only 25% of "supposed effects 'specifically from the field of social psychology that were under scrutiny.'" Id. at 1 & n.5. This article ultimately concluded that the studies under review had "chances of detecting an effect" that were "lower than . . . flipping a coin." Id. at 1. None of studies mentioned by Whidbey Health, however, specifically challenge the reproducibility of studies on the principles of sex stereotyping

ORDER - 4

and discrimination in the form of backlash effects.  Additionally, none of studies on which Dr. Rudman relied in her Report have been found to be irreplicable.

In her deposition, Dr. Rudman explained that "backlash effects" have been reproduced in several domains:

> Q.   Okay.  Do you know if anyone has independently replicated your research?
>
> A.   Backlash effects have been replicated in several domains.  I don't know of anyone who has taken my methodology and followed it to the letter in order to try to replicate a specific finding.  But there's all kinds of citations in my report where backlash effects have emerged in like the field of negotiation or leadership evaluation or, you know, nurses sabotaging female doctors in California.  There's just all kinds of studies that have been done that are consistent with backlash effects.

Rudman Dep. at 50:19–51:5, Ex. E to Hanley Decl. (docket no. 40-5).  Dr. Rudman additionally explained that social psychology researchers build on each other's work and the various studies share enough similarity that they may be considered conceptually replicated.  Id. at 73:3–14.

Whidbey Health challenges Dr. Rudman's testimony because she "has not shown whether recent independent research has replicated any of the particular findings cited in her report as to backlash effects in the workplace."  Mot. to Exclude at 9.  But Whidbey Health fails to provide any authority for the proposition that a study must be <u>recently</u> replicated to be reliable under Rule 702.  Additionally, when asked whether studies conducted before the "reform era" were less reliable, Dr. Rudman answered "[n]ot necessarily, no." Rudman Dep. at 50:14–16 (docket no. 40-5).

ORDER - 5

As observed over a decade ago, "'[s]ocial framework' analysis . . . has become commonplace." Apilado v. N. Am. Gay Amateur Athletic All., No. C10-0682, 2011 WL 13100729, *2 (W.D. Wash. July 1, 2011). In Tuli v. Brigham and Women's Hospital, 592 F. Supp. 2d 208 (D. Mass. 2009), a court permitted social framework testimony and allowed the expert to "describe how stereotyping and discrimination operate—what contexts, in what fashion—based on empirical research." Id. at 211–12 & 215. In Merrill v. M.I.T.C.H. Charter School Tigard, No. 10-219, 2011 WL 1457461 (D. Ore. Apr. 4, 2011), the court concluded that the social framework expert's testimony fell "within the range of reasonable expert opinion" and that the defendants' criticism of the expert's methodology as "unreliable" went to the weight, not the admissibility, of the evidence. Id. at *4–5; see id. at *4 (observing that the expert "provides a context within which the jury can evaluate the actions or statements made by plaintiff and [a defendant]."); see also Apilado, 2011 WL 13100729, at *2 ("Consistent with Daubert's requirements, the Ninth Circuit, among other courts, permits social framework testimony to show discrimination.").[1] The Court determines that Dr. Chinn has met her burden

---

[1] In recently excluding a social framework expert's testimony, one district court observed that "numerous scholars have noted that 'a social framework necessarily contains only general statements about reliable patterns of relations among variables as discovered within social scientific research . . . and goes no further.'" See Van v. Ford Motor Co., 332 F.R.D. 249, 267 (N.D. Ill. 2019) (quoting John Monahan, et. al., Contextual Evidence of Gender Discrimination: The Ascendance of "Social Frameworks", 94 VA. L. REV. 1715, 1745 (2008)). But the article on which that court relied was published prior to the cases in this Circuit allowing social framework testimony, and neither the article nor the decision in Van, which is not binding on this Court, persuade the Court that it should not allow any social framework testimony in this case.

ORDER - 6

under Rule 702 to establish the reliability and potential assistance to the trier of fact of Dr. Rudman's testimony about stereotyping and backlash effects generally.[2]

The remaining question is whether and to what extent Dr. Rudman will be permitted to opine on the ultimate issues of fact. Dr. Chinn has acknowledged that "ultimately it is not [Dr. Rudman's] job to tell the jurors 'what they should or should not decide.'" Resp. at 12 (docket no. 39) (citation omitted). The Court agrees; however, Dr. Rudman's Report, docket no. 34-1, contains a section on the application of gender and race stereotypes to this case and states that she will testify that Dr. Chinn's "treatment at Whidbey Health is consistent with prejudicial treatment and backlash effects as a result of [her] counterstereotypic status and behavior." Report at 27. This type of testimony may cross the line in terms of an expert's role and invade the province of the jury. Although experts may testify about ultimate issues of fact, they may not opine on an ultimate issue of law. Microsoft Corp. v. Motorola, Inc., C10-1823, 2013 WL 4008822, *11 (W.D. Wash. Aug. 5, 2013).

Therefore, the Court DEFERS a ruling on whether or to what extent Dr. Rudman may testify about how the social framework that she describes applies to this case. Subject to further order of the Court, Dr. Rudman will not be permitted to testify as to

---

[2] Whidbey Health argues that Dr. Rudman's testimony should be excluded because it relies on only minimal facts provided by Dr. Chinn's attorneys. See Mot. to Exclude at 10–12. This contention lacks merit. In preparation for her Report, Dr. Rudman reviewed Dr. Chinn's curriculum vitae, the Complaint, Whidbey Health's Answer, both Dr. Chinn's and Whidbey Health's responses to interrogatories, two reports by attorney Jason Rossiter (Whidbey Health's investigator for Dr. Chinn's reports of discrimination and retaliation), notes from Mr. Rossiter's interviews, and several emails. Report at 5; see Merrill, 2011 WL 1457461, at *4 (concluding that, where expert witness had reviewed the pleadings, videotaped depositions, deposition transcripts, and other documentary evidence, her testimony could not be excluded based on a lack of familiarity with the record).

ORDER - 7

whether Dr. Chinn's treatment at Whidbey Health was consistent with any prejudicial treatment and/or backlash effects. See Report at 27 (docket no. 34-1). The closer an expert witness "comes to testify about the very facts at issue in the case, the more that testimony must be scrutinized." Tuli, 592 F. Supp. 2d at 212 n.4. Although expert witnesses are asked to testify to opinion rather than fact, "the difference between fact and opinion is often merely a difference of degree." Id.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Whidbey Health's Motion to Exclude Plaintiff's Expert Dr. Rudman, docket no. 33, is DENIED in part and DEFERRED in part. The motion to entirely exclude Dr. Rudman's testimony is DENIED. The Court DEFERS ruling on whether or to what extent Dr. Rudman may testify about how the social framework that she describes applies to the facts of this case.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 9th day of November, 2021.

Thomas S. Zilly
United States District Judge

ORDER - 8